Law Office of William Carlon<br>
437 Post Street, Napa, CA 94559<br>
william@carlonlaw.com<br>
(530) 514-4115

July 3, 2024

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Ronald R. Loynds, Chief Executive Officer
Chris Hall, General Manager
Armando Salazar, Quality Engineer
Accurate Steel Treating, Inc.
10008 Miller Way
South Gate, CA 90280

Re:   **NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT") (33 U.S.C. §§ 1251 *et seq*.)**

Dear Ronald Loynds, Chris Hall, and Armando Salazar:

This firm represents Los Angeles Waterkeeper ("LA Waterkeeper") regarding violations of the Clean Water Act (also referred to herein as the "Act") occurring at Accurate Steel Treating, Inc.'s facility located at 10008 Miller Way, in South Gate, California 90280 ("Facility").  This letter is being sent to you individually, as the responsible owners and/or operators of the enterprise, and as the registered agent for these entities.  Unless otherwise noted, Ronald Loynds, Chris Hall, Armando Salazar, and Accurate Steel Treating, Inc. shall hereinafter be collectively referred to as "Accurate Steel."  The purpose of this letter is to provide Accurate Steel with notice of the violations of the Industrial General Permit occurring at the Facility, including, but not limited to, noncompliant discharges of polluted storm water associated with industrial activities from the Facility into local surface waters.

Accurate Steel is in ongoing violation of the substantive and procedural requirements of the Clean Water Act, 33 U.S.C. § 1251 *et seq*., and National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 14-57-DWQ as amended by Order No. 2015-0122-DWQ & Order No. 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load ("TMDL") Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use (collectively "General Permit" or "Permit").[1]

---

[1] Accurate Steel most recently submitted a Notice of Intent ("NOI") to comply with the General Permit for the Facility on or about August 3, 2015.  The Facility is assigned the Waste Discharge Identification ("WDID") Number 4 19I009388.

Notice of Violation and Intent to File Suit
July 3, 2024
Page 2

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Act subjects Accurate Steel to a penalty for all violations occurring during the period commencing five years prior to the date of the Notice Letter. These provisions of law authorize civil penalties of up to $66,712 per day per violation for all Clean Water Act violations occurring after November 2, 2015, where penalties are assessed on or after December 27, 2023.

In addition to civil penalties, LA Waterkeeper will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law. Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The Clean Water Act requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur. *See* 40 C.F.R. § 135.2. As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility. 40 C.F.R. § 135.3(a). At the expiration of sixty (60) days from the date of this letter, LA Waterkeeper intends to file suit under Section 505(a) of the Act in federal court against Accurate Steel for violations of the Clean Water Act and the Permit.

### I. Background.

#### A. Los Angeles Waterkeeper

LA Waterkeeper is a 501(c)(3) public benefit corporation organized under the laws of California with its main office located in Los Angeles, California. LA Waterkeeper was founded in 1993, and its members live, work, and recreate in and around the Los Angeles area. LA Waterkeeper is dedicated to the preservation, protection, and defense of the inland and coastal waters of Los Angeles County including without limitation the Los Angeles River and its tributaries. To further its mission, LA Waterkeeper actively seeks federal and state implementation of the Clean Water Act. Where necessary, LA Waterkeeper directly initiates enforcement actions on behalf of itself and its members.

Members of LA Waterkeeper own homes and reside in Los Angeles County, and use and enjoy the Los Angeles River, and its tributaries, and the bordering parks, pathways, golf courses and athletic fields. As explained in detail below, Accurate Steel discharges pollutants into Rio Hondo and the Los Angeles River in violation of the Clean Water Act and the General Permit. LA Waterkeeper members also use and enjoy Rio Hondo and the Los Angeles River, including, without limitation, to bike, boat, kayak, bird watch, ride horses, view wildlife, hike, walk, and run. Additionally, LA Waterkeeper members use Rio Hondo and the Los Angeles River to engage in scientific study through pollution and habitat monitoring and restoration activities. The unlawful discharge of pollutants from the Facility into Rio Hondo and the Los Angeles River impairs LA Waterkeeper members' use and enjoyment of these waters. The unlawful

Notice of Violation and Intent to File Suit
July 3, 2024
Page 3

discharge of pollutants from the Facility requires LA Waterkeeper to expend its limited resources to study and combat pollution from the Facility. Thus, the interests of LA Waterkeeper and its members have been, are being, and will continue to be adversely affected by Accurate Steel's failure to comply with the Clean Water Act and the General Permit.

### B. The Clean Water Act.

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The Act prohibits the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; *San Francisco Bay Keeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1156 (9th Cir. 2002). The Act is administered largely through the NPDES permit program. 33 U.S.C. § 1342. In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system. Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme). The discharge of pollutants not specifically allowed by a NPDES permit is illegal. *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states. *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program). The CWA authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b). Pursuant to Section 402 of the Act, the Administrator of the EPA has authorized California's State Board to issue individual and general NPDES permits in California. 33 U.S.C. § 1342.

### C. California's General Permit for Storm Water Discharges Associated with Industrial Activities

Facilities discharging, or having the potential to discharge, storm water associated with industrial activities that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a Notice of Intent to Comply ("NOI"). General Permit, Standard Condition XXI.A. These facilities must file their NOIs before the initiation of industrial operations. *Id.*

Facilities must strictly comply with all of the terms and conditions of the General Permit. A violation of the General Permit is a violation of the CWA. The General Permit contains three primary and interrelated categories of requirements: (1) discharge prohibitions, receiving water limitations and effluent limitations; (2) Storm Water Pollution Prevention Plan ("SWPPP") requirements; and (3) self-monitoring and reporting requirements.

Beginning under the General Permit Facilities must submit Exceedance Response Action Plans ("ERA Report") to the State Board outlining effective plans to reduce pollutants if a Facility reports a pollutant above the Numeric Action Level ("NAL"). An annual NAL exceedance occurs when the average of all the analytical results for a parameter from samples taken within a reporting year exceeds the annual NAL value for that parameter. General Permit

Notice of Violation and Intent to File Suit
July 3, 2024
Page 4

Section XII.A.  An instantaneous maximum NAL exceedance occurs when two (2) or more analytical results from samples taken for any single parameter within a reporting year exceed the instantaneous maximum NAL value or are outside of the instantaneous maximum NAL range for pH.  *Id.*

The General Permit contains requirements that are specific to the Total Maximum Daily Load ("TMDL") for watersheds and water bodies with U.S. EPA-approved and U.S. EPA-established TMDLs for Dischargers covered by the General Permit.  TMDLs relate to the maximum amount of a pollutant that a water body can receive and still attain water quality standards.  Dischargers located within a watershed for which a TMDL has been approved by U.S. EPA shall comply with any applicable TMDL-specific permit requirements that are set forth in Attachment E to the General Permit.  General Permit, V.C.  Dischargers shall compare all sampling and analytical results from each distinct sample to the corresponding instantaneous Numeric Effluent Limitations ("NEL") values in the TMDL Compliance Table E-2.  *Id.*, Attachment C at 5.  An exceedance of an NEL occurs when two or more analytical results from samples taken for any single parameter within a reporting year exceeds the instantaneous maximum NEL value.  *Id.*  An exceedance of an NEL is a violation of the General Permit.  *Id.*

   **D.**  **Accurate Steel's South Gate Facility**

Accurate Steel's Facility is located at 10008 Miller Way in South Gate, California 90280.  According to its SWPPP, last updated January 12, 2024, the Facility's primary industrial purpose is the treatment of steel through various processes, electroplating, and supporting operations.  The SWPPP also states that the Facility operates seven days a week, 24 hours per day, with the exclusion of scheduled holidays.

Information available to LA Waterkeeper indicates that Accurate Steel conducts industrial activities both indoors and outdoors at the approximately 1.7-acre Facility.  Industrial activities at the Facility include, but are not limited to: electroplating, anodizing, maintenance of equipment used to support processing operations, operation of furnace and air compressors, operation of air scrubbers, operation of an oil cooler, hazardous materials storage, operation of steel treatment equipment and sand blasting units, storage of steel products awaiting quality control approvals, storage of gases and materials used for process, storage of chemicals and gases in aboveground tanks, material handling and staging for customer parts ready for shipment, operation of a colling tower, and operation of equipment in support of these activities.

Under the General Permit, Accurate Steel is required to analyze its samples of storm water for total suspended solids, oil and grease, and pH.  Facilities must also sample and analyze for additional parameters identified on a facility-specific basis for parameters identified in a pollutant source assessment, for parameters related to receiving water impairments, or as required by the Regional Board.  General Permit, Section XI.B.6.  According to the Facility's NOI, Accurate Steel operates under Standard Industrial Classification ("SIC") Codes 3398 ("Metal Heat Treating") and 3471 ("Electroplating, Plating, Polishing, Anodizing, and Coloring").  Facilities operating under SIC Codes 3398 and 3471 must also analyze storm water samples for zinc, nitrate plus nitrite nitrogen, iron, and aluminum.  General Permit, Section

Notice of Violation and Intent to File Suit
July 3, 2024
Page 5

XI.B.6.d, Table 1. Pursuant to the Clean Water Act Section 303(d) list of impaired waterbodies[2], Rio Hondo is listed as impaired for copper, indicator bacteria, lead, pH, toxicity, trash, oil and grease, and zinc. The Los Angeles River Reach 2 (Carson to Figueroa Street) is listed for the following water quality impairments: ammonia, copper, indicator bacteria, lead, nutrients (algae), and trash. The Los Angeles River Reach 1 (Estuary to Carson Street) is listed for the following water quality impairments: ammonia, copper, cyanide, indicator bacteria, lead, nutrients (algae), pH, trash, and zinc. The Los Angeles River Estuary is listed for the following water quality impairments: chlordane, DDT, PCBs, toxicity, and trash.  San Pedro Bay is listed for chlordane, PCBs, Total DDT, and toxicity.  The following impairments exist within the HUC10 watershed: ammonia, cyanide, diazinon, dissolved oxygen, *E. coli* and enterococcus, copper, dissolved copper, zinc, lead, cadmium, nitrates and nitrites, oil and pH.  The SWPPP states that of those listed impairments, zinc, oil, and pH are associated with the industrial activities at the Facility.

According to its SWPPP, Accurate Steel collects and discharges storm water associated with industrial activities at the Facility through at least four discharge locations, D-1, D-2, D-3, and D-4, associated with four driveways to Miller Way, the North Driveway, the Middle Driveway, the South Driveway, and the Driveway/Roof Discharge, respectively.

The SWPPP suggests that all industrial activity and production takes place within two drainage areas.  Drainage Area 1 is located on the north side of the Facility and receives storm water from rooftop run-off associated with Buildings 3 and 4, rooftop run-off associated with overhead coverage of furnace and air compressors located on the north side of Building 2, the area on the east side of Building 3 used to store air pollution control equipment, the area on the north east side of Building 2 used to store oil cooler equipment, the area on the south side of Building 3 used for storage of equipment used to support processing operations within the building, and a hazardous materials storage area located on the south side of Building 3 used for the storage of chemicals and oils.  The SWPPP states that Drainage Area 1 collects and discharges storm water to D-1, which is located at the North Driveway, and into the municipal separate storm sewer system ("MS4") on Miller Way.

Drainage Area 2 is located on the south side of the Facility and receives storm water from rooftop downspouts from the Office Building, Buildings 1 and 2, the area of the Facility on the south side of Building 2 used for staging customer parts ready for shipment, the area of the Facility located on the south side of Building 2 used for cooling tower operations and propane and chemical storage, the area of the Facility on the south side of Building 2 used to store gases in aboveground tanks, and the area on the south west side of Building 2 used for the storage of

---

[2] Additional impairments are proposed in the 2024 Draft 303(d) list, including, but not limited to: for the Los Angeles River, Reach 2 (Carson to Figueroa Street) adding oil and grease and zinc; for Los Angeles River, Reach 1 (Estuary to Carson Street) adding profenofos, iron, oil and grease, toxicity, pyrethroids, fipronil, imidacloprid, bifenthrin, cypermethrin, cyfluthrin, deltamethrin, permethrin, and aluminum; for the Los Angeles River Estuary, adding copper, dissolved oxygen, zinc, and indicator bacteria; and for San Pedro Bay adding copper and DDE.

oil water cooler equipment used to support processing operations within the building. The SWPPP states that Drainage Area 2 collects and discharges storm water to D-2 and D-3.

The SWPPP suggests that D-4 is limited to storm water discharges that originate from rooftop areas and outside areas that are not exposed to industrial activities or materials.

LA Waterkeeper is informed and believes that the Facility discharges storm water from other areas at the Facility that are not monitored.

The areas of industrial activities are sources of pollutants at the Facility. From these drainage areas, the Facility discharges to municipal storm drains that discharge to Rio Hondo, the Los Angeles River, and ultimately to the Pacific Ocean ("Impacted Waters"). The Impacted Waters are waters of the United States within the meaning of the Clean Water Act.

## II. Accurate Steel's Violations of the Act and Permit.

On July 1, 2020, the amendment to the General Permit by Order No. 2018-0028-DWQ became enforceable and updated pollutant-discharge standards including Total TMDL Implementation Requirements and Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use. General Permit Attachment E. Any exceedance of a Numeric Effluent Limitation ("NEL") following July 1, 2020 is a per se violation of the General Permit and Clean Water Act. For this Facility, the applicable NELs include ammonia (10.1 mg/L), zinc (0.159 mg/l), nitrate plus nitrite nitrogen (8.0 mg/L), nitrate nitrogen (8.0 mg/L), and nitrite nitrogen (1.0 mg/L). In recent reporting years, and also following the implementation of the NEL for the Los Angeles River, Accurate Steel had numerous exceedances, and LA Waterkeeper alleges that Accurate Steel will continue to exceed the NEL in the future.

Based on its review of available public documents, LA Waterkeeper is informed and believes that Accurate Steel, through its operation of the Facility, is in ongoing violation of both the substantive and procedural requirements of the CWA and the General Permit. These violations are ongoing and continuous. Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, Accurate Steel is subject to penalties for violations of the Act since July 3, 2019.

### A. Accurate Steel Discharges Storm Water Containing Pollutants in Violation of the General Permit's Discharge Prohibitions, Receiving Water Limitations and Effluent Limitations.

Accurate Steel's storm water sampling results provide conclusive evidence of Accurate Steel's failure to comply with the General Permit's discharge prohibitions, receiving water limitations and effluent limitations at its Facility. Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1987).

#### 1. Applicable Water Quality Standards.

The General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance. General Permit, Discharge Prohibition III.C. The General Permit also prohibits discharges that violate any discharge prohibition contained in the applicable Regional Water Board's Basin Plan or

statewide water quality control plans and policies.  General Permit, Discharge Prohibition III.D.  Furthermore, storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards in any affected receiving water.  General Permit, Receiving Water Limitations VI.A, VI.B.

Dischargers are also required to prepare and submit documentation to the Regional Board upon determination that storm water discharges are in violation of the General Permit's Receiving Water Limitations.  General Permit, Special Condition XX.B.  The documentation must describe changes the discharger will make to its current storm water best management practices ("BMPs") in order to prevent or reduce any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards.  *Id*.

The California Toxics Rule ("CTR") is an applicable water quality standard under the Permit, the violation of which is a violation of Permit conditions.  *Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.*, 2015 U.S. Dist. LEXIS 108314, *21 (E.D. Cal. 2015).  The CTR establishes numeric receiving water limits for toxics pollutants in California surface waters.  40 C.F.R. § 131.38.  The CTR establishes a numeric limit for at least one of the pollutants discharged by Accurate Steel: zinc – 0.12 mg/L (maximum concentration).

The Water Quality Control Plan for the Los Angeles Region ("Basin Plan") sets forth water quality standards and prohibitions applicable to Accurate Steel's storm water discharges from its Facility.  The Basin Plan includes a narrative toxicity standard which states that "(a)ll waters shall be maintained free of toxic substances in concentrations that produce detrimental physiological responses in human, plant, animal, or aquatic life."  The Basin Plan's Water Quality Standards require narrower pH range of 6.5 – 8.5 pH units for inland surface waters such as Rio Hondo and the Los Angeles River.

**2.      Applicable Effluent Limitations.**

Dischargers are required to reduce or prevent pollutants in their storm water discharges through implementation of best available technology economically achievable ("BAT") for toxic and nonconventional pollutants and best conventional pollutant control technology ("BCT") for conventional pollutants. General Permit, Effluent Limitation V.A.  Conventional pollutants include total suspended solids, oil & grease, pH, biochemical oxygen demand and fecal coliform.  40 C.F.R. § 401.16.  All other pollutants are either toxic or nonconventional.  40 C.F.R. §§ 401.15-16.

Under the General Permit, benchmark levels established by the EPA ("EPA benchmarks") and Numeric Action Levels ("NAL") serve as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT.  *Santa Monica Baykeeper v. Kramer Metals,* 619 F. Supp. 2d 914, 920, 923 (C.D. Cal 2009); General Permit, Exceedance Response Action XII.A.

Notice of Violation and Intent to File Suit
July 3, 2024
Page 8

The following EPA benchmarks have been established for pollutants discharged by Accurate Steel: total suspended solids – 100 mg/L; pH – 6.0-9.0 s.u.; zinc – 0.12 mg/L; aluminum – 1.1 mg/L; ammonia – 2.14 mg/L; and, nitrate plus nitrite nitrogen – 0.68 mg/L.  The following Annual NALs have been established for pollutants discharged by Accurate Steel: total suspended solids – 100 mg/L; oil & grease – 15.0 mg/L; zinc – 0.26 mg/L; aluminum – 0.75 mg/L; ammonia – 2.14 mg/L; iron – 1.0 mg/L; and nitrate plus nitrite nitrogen – 0.68 mg/L. Additionally, the following instantaneous NALs have been established for pollutants discharged by Accurate Steel: pH – 6.0-9.0 s.u.; total suspended solids – 400 mg/L; and oil & grease – 25.0 mg/L.

The General Permit also requires a permittee whose discharges violate the General Permit's Receiving Water Limitations or water quality standards, such as, NALs, TMDLs, TNALs, and NELs to implement additional BMPs or other control measures that are tailored to that facility in order to attain compliance with the receiving water limitation.  A discharger that is notified by a Regional Board or who determines the discharge is causing or contributing to an exceedance of a water quality standard must comply with the Water Quality Based Corrective Action in Section XX.B of the General Permit and report to the Regional Board regarding the same.  General Permit, Section XX.B.  As noted above, the NELs established numeric limits for some of the pollutants discharged by Accurate Steel: ammonia (10.1 mg/L), zinc (0.159 mg/L), nitrate plus nitrite nitrogen (8.0 mg/L), nitrate nitrogen (8.0 mg/L), and nitrite nitrogen (1.0 mg/L).

### 3. Accurate Steel's Storm Water Sample Results

As detailed above, Accurate Steel's SWPPP describes four discharge points/sampling locations.  Storm water discharged from the Facility flows into the municipal separate storm sewer system to the Impacted Waters.

Except as provided in Section XI.C.4 of the General Permit, samples shall be collected from each drainage area at all discharge locations.  The samples must be: a) representative of storm water associated with industrial activities and any commingled authorized non-storm water discharges; or, b) associated with the discharge of contained storm water.  At this time, LA Waterkeeper is unable to determine if storm water from the four sampling points at the Facility is representative of industrial storm water at the Facility.

The following discharges of pollutants from the Facility have violated the discharge prohibitions, receiving water limitations and effluent limitations of the Permit:

Notice of Violation and Intent to File Suit
July 3, 2024
Page 9

a. **Discharge of Storm Water Containing Zinc at Concentrations in Excess of Applicable Water Quality Standards**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | Numeric Effluent Limitation (mg/L) | CTR & EPA Benchmark (mg/L) | NAL (mg/L) |
|---|---|---|---|---|---|---|
| 12/20/2023 | North Driveway | Zn | 1.6 | 0.159 | 0.12 | 0.26 |
| 12/20/2023 | South Driveway | Zn | 0.33 | 0.159 | 0.12 | 0.26 |
| 12/20/2023 | Middle Driveway | Zn | 0.22 | 0.159 | 0.12 | 0.26 |
| 1/20/2024 | North Driveway | Zn | 0.32 | 0.159 | 0.12 | 0.26 |
| 1/20/2024 | South Driveway | Zn | 0.56 | 0.159 | 0.12 | 0.26 |
| 2/1/2024 | North Driveway | Zn | 0.43 | 0.159 | 0.12 | 0.26 |
| 2/1/2024 | South Driveway | Zn | 0.72 | 0.159 | 0.12 | 0.26 |
| 3/6/2024 | North Driveway | Zn | 0.19 | 0.159 | 0.12 | 0.26 |

b. **Discharge of Storm Water Containing Ammonia at Concentrations in Excess of Applicable Water Quality Standards**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark (mg/L) | NAL (mg/L) |
|---|---|---|---|---|---|
| 12/14/2021 | South Driveway | Ammonia | 2.2 | 2.14 | 2.14 |
| 3/28/2022 | North Driveway | Ammonia | 4.9 | 2.14 | 2.14 |
| 3/28/2022 | South Driveway | Ammonia | 2.7 | 2.14 | 2.14 |
| 11/8/2022 | South Driveway | Ammonia | 2.4 | 2.14 | 2.14 |
| 3/6/2024 | North Driveway | Ammonia | 2.9 | 2.14 | 2.14 |
| 3/6/2024 | South Driveway | Ammonia | 3 | 2.14 | 2.14 |

c. **Discharge of Storm Water Containing pH Violating Applicable Water Quality Standards**

| Date | Discharge Point | Parameter | pH of Discharge (s.u.) | NAL & EPA Benchmark (s.u.) | Basin Plan (s.u.) |
|---|---|---|---|---|---|
| 4/6/2020 | North Driveway | pH | 6 | 6.0 – 9.0 | 6.5 – 8.5 |

Notice of Violation and Intent to File Suit
July 3, 2024
Page 10

| Date | Discharge Point | Parameter | pH of Discharge (s.u.) | NAL & EPA Benchmark (s.u.) | Basin Plan (s.u.) |
|---|---|---|---|---|---|
| 4/6/2020 | South Driveway | pH | 6 | 6.0 – 9.0 | 6.5 – 8.5 |
| 3/9/2021 | South Driveway | pH | 6.45 | 6.0 – 9.0 | 6.5 – 8.5 |
| 11/8/2022 | North Driveway | pH | 6 | 6.0 – 9.0 | 6.5 – 8.5 |
| 11/8/2022 | South Driveway | pH | 6 | 6.0 – 9.0 | 6.5 – 8.5 |
| 1/5/2023 | North Driveway | pH | 6 | 6.0 – 9.0 | 6.5 – 8.5 |
| 1/5/2023 | South Driveway | pH | 6 | 6.0 – 9.0 | 6.5 – 8.5 |
| 12/20/2023 | Middle Driveway | pH | 6 | 6.0 – 9.0 | 6.5 – 8.5 |
| 12/20/2023 | North Driveway | pH | 6 | 6.0 – 9.0 | 6.5 – 8.5 |
| 12/20/2023 | South Driveway | pH | 6 | 6.0 – 9.0 | 6.5 – 8.5 |
| 1/20/2024 | North Driveway | pH | 6.04 | 6.0 – 9.0 | 6.5 – 8.5 |
| 2/1/2024 | North Driveway | pH | 9 | 6.0 – 9.0 | 6.5 – 8.5 |
| 2/1/2024 | Middle Driveway | pH | 9 | 6.0 – 9.0 | 6.5 – 8.5 |
| 2/1/2024 | South Driveway | pH | 9 | 6.0 – 9.0 | 6.5 – 8.5 |
| 3/6/2024 | North Driveway | pH | 6 | 6.0 – 9.0 | 6.5 – 8.5 |
| 3/6/2024 | South Driveway | pH | 6 | 6.0 – 9.0 | 6.5 – 8.5 |

    d. **Discharge of Storm Water Containing Nitrate Plus Nitrite Nitrogen at Concentrations in Excess of Applicable Water Quality Standards**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | Numeric Effluent Limitation (mg/L) | EPA Benchmark/NAL (mg/L) |
|---|---|---|---|---|---|
| 12/20/2023 | North Driveway | N+N | 1.5 | 8.0 | 0.68 |

e. **Discharge of Storm Water Containing Oil & Grease at Concentrations in Excess of Applicable Water Quality Standards**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | Annual NAL (mg/L) | Instantaneous NAL (mg/L) |
|---|---|---|---|---|---|
| 12/28/2020 | North Driveway | O&G | 17.5 | 15 | 25 |
| 3/9/2021 | North Driveway | O&G | 31.9 | 15 | 25 |
| 3/28/2022 | North Driveway | O&G | 30.8 | 15 | 25 |
| 3/28/2022 | South Driveway | O&G | 25.9 | 15 | 25 |
| 12/20/2023 | South Driveway | O&G | 23.4 | 15 | 25 |

f. **Discharge of Storm Water Containing Total Suspended Solids at Concentrations in Excess of Applicable Water Quality Standards**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | Annual NAL (mg/L) |
|---|---|---|---|---|
| 3/3/2021 | South Driveway | TSS | 118 | 100 |
| 3/28/2022 | South Driveway | TSS | 102 | 100 |

g. **Discharge of Storm Water Containing Iron at Concentrations in Excess of Applicable Water Quality Standards**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | Annual NAL (mg/L) | EPA Benchmark (mg/L) |
|---|---|---|---|---|---|
| 3/6/2024 | North Driveway | Fe | 1.4 | 1.0 | 1.0 |

h. **Accurate Steel's Sample Results Are Evidence of Violations of the General Permit**

Accurate Steel's sample results demonstrate violations of the Permit's discharge prohibitions, receiving water limitations and effluent limitations set forth above. LA Waterkeeper is informed and believes that Accurate Steel has known that its storm water contains pollutants at levels exceeding applicable water quality standards since at least July 3,

Notice of Violation and Intent to File Suit
July 3, 2024
Page 12

2019, including at least eight exceedances of water quality standards for zinc (all of which are above the NEL); six exceedances of water quality standards for ammonia; sixteen exceedances of water quality standards for pH; one exceedance of water quality standards for nitrate plus nitrite nitrogen; five exceedances of water quality standards for oil and grease; two exceedances of water quality standards for total suspended solids; and, one exceedance of water quality standards for iron.

LA Waterkeeper alleges that such violations occur each time storm water discharges from the Facility.  **Attachment A** hereto, sets forth the specific rain dates on which LA Waterkeeper alleges that Accurate Steel has discharged storm water containing impermissible levels of zinc, ammonia, pH, nitrogen, oil and grease, total suspended solids, and iron in violation of the General Permit.  General Permit, Discharge Prohibitions III.C and III.D; Receiving Water Limitations VI.A, VI.B; Effluent Limitations V.A and V.C.

### 4. Accurate Steel Has Failed to Implement BAT and BCT

Dischargers must implement BMPs that fulfill the BAT/BCT requirements of the CWA and the General Permit to reduce or prevent discharges of pollutants in their storm water discharges.  General Permit, Effluent Limitation V.A.  To meet the BAT/BCT standard, dischargers must implement minimum BMPs and any advanced BMPs set forth in the General Permit's SWPPP Requirements provisions where necessary to reduce or prevent pollutants in discharges.  *See* General Permit, Sections V, X.H.1-2.

Accurate Steel has failed to implement and maintain the minimum BMPs required by the General Permit as evidenced by the exceedances identified above.  Specifically, Accurate Steel has failed to comply with the following: good housekeeping requirements, preventive maintenance requirements; spill and leak prevention and response requirements; material handling and waste management requirements; erosion and sediment controls; employee training and quality assurance; and record keeping.  Permit, Section X.H.1(a-g).

Accurate Steel has further failed to implement advanced BMPs necessary to reduce or prevent discharges of pollutants in its storm water sufficient to meet the BAT/BCT standards, including:  exposure minimization BMPs; containment and discharge reduction BMPs; treatment control BMPs; or other advanced BMPs necessary to comply with the General Permit's effluent limitations.  General Permit, Sections X.H.2.  Accurate Steel's own storm water sampling results are further evidence of its failure to implement BMPs that meet the BAT/BCT standards.  In reporting years identified below, Accurate Steel has exceeded the annual NAL for ammonia, oil and grease, and zinc.  LA Waterkeeper alleges that if Accurate Steel had collected the required number of samples in each reporting period, it would have exceeded the annual NAL for additional pollutants, and in additional years.

| Reporting Year | Pollutant | Average Pollutant Concentration | Numeric Action Level (Annual) |
|---|---|---|---|
| 2021-2022 | Ammonia | 2.75 mg/L | 2.14 mg/L |
| 2021-2022 | Oil and | 16.7 mg/L | 15.0 mg/L |

Notice of Violation and Intent to File Suit
July 3, 2024
Page 13

|  | Grease |  |  |
|---|---|---|---|
| 2023-2024 | Zinc | 0.45 mg/L | 0.26 mg/L |

In response to NAL exceedances of oil and grease and ammonia in the 2021-2022 reporting year, Accurate Steel prepared a Level 1 ERA report dated 12/1/2022. The Level 1 ERA report purports to evaluate the sources of ammonia and oil and grease at the Facility and to evaluate whether the BMPs described in the Facility's SWPPP have been effective at reducing or preventing ammonia and oil and grease pollution. The Level 1 ERA report further purports to assess the Facility's SWPPP and its implementation to determine whether additional BMPs or SWPPP implementation measures are necessary to reduce or prevent ammonia and oil and grease in the Facility's discharges from exceeding the General Permit's NALs.

The Level 1 ERA report identifies the following BMPs that were either implemented, or scheduled to be implemented, in 2022 to address oil and grease pollution:

- Implement an effective spill response program to address oil spills and accumulated oil from operations. Facility has hired a full-time maintenance janitor to assist in the program. (Implementation Date: June 30, 2022);
- Ensure forklift maintenance schedule per manufacturer specification is occurring. (Implementation Date: June 30, 2022);
- Relocate greasy materials and equipment into a building. Alternatively, cover items with a tarp and place on a pallet to prevent exposure. (Implementation Date: September 13, 2022);

The Level 1 ERA further identifies three BMPs that were either implemented, or scheduled to be implemented, in 2022 to address ammonia pollution:

- Feral cat excrement will be addressed to the extent feasible by the maintenance janitor. (Implementation Date: June 30, 2022);
- Vehicle washing needs to be conducted properly (on containment pads and wash water properly disposed of) or conducted off-site. (Implementation Date: November 4, 2022);
- Facility is utilizing a soap that does not list constituents and it may contain ammonia
- chloride to clean the outdoor area. Facility ceased activity and will consider wet
- vacuuming without soap. (Implementation Date: November 4, 2022).

The Level 1 ERA report identifies SWPPP updates to reflect the new BMPs described above.

Accurate Steel has failed to implement BAT/BCT at the Facility because the Facility continues to discharge storm water containing pollutants in concentrations that exceed NALs and NELs. Accurate Steel recorded at least 1 NAL exceedance for oil and grease after the BMPs identified above were fully implemented in 2022. In addition, the Facility continues to discharge storm water containing ammonia in excess of the NAL standard and zinc in excess of the NEL standard.

Each day that Accurate Steel has failed to develop and implement BAT and BCT at the

Notice of Violation and Intent to File Suit
July 3, 2024
Page 14

Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).  Accurate Steel has been in violation of the BAT and BCT requirements at its Facility every day since at least July 3, 2019.

### 5. Accurate Steel Has Failed to Comply with the Monitoring Requirements of the General Permit.

The General Permit requires dischargers to implement a Monitoring Implementation Plan.  General Permit, Section X.I.  As part of their monitoring plan, dischargers must identify all storm water discharge locations.  Permit, Section X.I.2.  Dischargers must then conduct monthly visual observations of each drainage area, as well as visual observations during discharge sampling events.  General Permit, Section XI.A.1 and 2.

Dischargers must collect and analyze storm water samples from two (2) storm events within the first half of each reporting year (July 1 to December 31) and two (2) storm events during the second half of each reporting year (January 1 to June 30).  General Permit, Section XI.B.  Section XI.B requires dischargers to sample and analyze during the wet season for basic parameters such as pH, total suspended solids ("TSS") and oil and grease ("O&G"), certain industry-specific parameters set forth in Table 2 of the General Permit, and other pollutants likely to be in the storm water discharged from the facility based on the pollutant source assessment.  General Permit, Section XI.B.6.  Dischargers must submit all sampling and analytical results via SMARTS within thirty (30) days of obtaining all results for each sampling event.  General Permit, Section XI.B.11.

Accurate Steel has failed to develop and implement an adequate Monitoring Implementation Plan for its Facility, and has thus violated the monitoring requirements of the General Permit.  Accurate Steel has failed to collect the required number of samples for each reporting period, and has failed to have each of those samples analyzed for all required parameters.  For example, Accurate Steel failed to have their storm water samples analyzed for aluminum, iron, nitrate plus nitrite nitrogen, and zinc from at least July 3, 2019 until June 30, 2023; and, Accurate Steel failed to collect the required number of samples from the following discharge points during the specified reporting years:

| Reporting Year | Discharge Point | Number of Samples Collected in 1st Half of Reporting Period | Number of Samples Collected in 2nd Half of Reporting Period |
|---|---|---|---|
| 2019-2020 | North Driveway | 0 | 2 |
| 2019-2020 | Middle Driveway[3] | 0 | 0 |
| 2019-2020 | South Driveway[4] | 1 | 1 |

---

[3] The Middle Driveway was not sampled until 2023-2024 because it was omitted as part of the Facility's Qualified Combined Samples Justification.
[4] The Facility included a Sampling Frequency Reduction Certification in its SWPPP uploaded to SMARTS on or about May 1, 2018, and in subsequent revisions.  However, the Facility is not eligible for a Sampling Frequency Reduction once an NAL/TNAL/NEL exceedance occurs.  As noted above, the Facility exceeded NALs in the 2021-

Notice of Violation and Intent to File Suit
July 3, 2024
Page 15

| 2020-2021 | North Driveway | 1 | 3 |
| 2020-2021 | Middle Driveway³ | 0 | 0 |
| 2020-2021 | South Driveway | 1 | 3 |
| 2021-2022 | North Driveway | 1 | 1 |
| 2021-2022 | Middle Driveway³ | 0 | 0 |
| 2021-2022 | South Driveway | 1 | 1 |
| 2022-2023 | Middle Driveway³ | 0 | 0 |
| 2023-2024 | North Driveway | 1 | 3 |
| 2023-2024 | Middle Driveway | 1 | 1 |
| 2023-2024 | South Driveway | 1 | 3 |

Each day that Accurate Steel has failed to develop and implement an adequate Monitoring Implementation Plan is a separate and distinct violation of the Act and Permit. Accurate Steel has been in violation of the Monitoring requirements every day since at least July 3, 2019.

### 6. Accurate Steel Has Failed to Develop and Implement an Adequate Storm Water Pollution Prevention Plan.

The General Permit requires dischargers to develop and implement a site-specific SWPPP. General Permit, Section X.A. The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) annual comprehensive facility compliance evaluation; and, (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable. *See id.*

Dischargers must revise their SWPPP whenever necessary and certify and submit via the Regional Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") their SWPPP within 30 days whenever the SWPPP contains significant revisions(s); and, certify and submit via SMARTS for any non-significant revisions not more than once every three (3) months in the reporting year. General Permit, Section X.B.

LA Waterkeeper's investigation indicates that Accurate Steel has been operating with an inadequately developed and implemented SWPPP in violation of General Permit requirements. Accurate Steel has failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary, has failed to develop and implement an adequate site map, and has failed to describe and evaluate the industrial materials and potential pollutant sources at the Facility, all of which have resulted in the Facility's numerous continuing effluent limitation violations.

---

2022 reporting year, making it ineligible, at least, to enjoy the Sampling Frequency Reduction for the subsequent reporting year, 2022-2023. Accurate Steel failed to recertify its Sampling Frequency Reduction until its 2023 SWPPP amendment, but then immediately exceeded NALs and NELs again in the 2023-2024 reporting year. Accurate Steel is currently ineligible to reduce its sampling frequency under the permit.

Notice of Violation and Intent to File Suit
July 3, 2024
Page 16

Each day Accurate Steel failed to develop and implement an adequate SWPPP at its Facility is a violation of the General Permit. The SWPPP violations described above were at all times in violation of Section X of the General Permit. Accurate Steel has been in violation of these requirements at its Facility every day since at least July 3, 2019.

### 7. Accurate Steel Has Failed to Submit Timely, True and Correct Reports.

Section XVI of the Permit requires dischargers to submit an Annual Report by July 15th of each reporting year to the Regional Board. The Annual Report must be signed and certified by a discharger's Legally Responsible Person, or Duly Authorized Representative. General Permit, Sections XVI.A, XXI.K. The Annual Report must include a compliance checklist, certifying compliance with the General Permit and an explanation of any non-compliance. General Permit, Section XVI.B.

The General Permit also requires dischargers who exceed NELs and NALs to comply with Water Quality Based Corrective Action, Section XX.B, and Exceedance Response Actions, Section XII, respectively.

LA Waterkeeper's investigations indicate that Accurate Steel has submitted incomplete Annual Reports and purported to comply with the Permit despite significant noncompliance at its Facility. For example, Annual Reports between 2019 and 2023 certify, under penalty of perjury, that Accurate Steel has between 2 and 3 storm water discharge locations at the Facility, when in fact there are at least four storm water discharge locations. Furthermore, Accurate Steel has failed to accurately report their noncompliance to the Regional Board, and has failed to submit all required reports pursuant to Sections XX.B and XII in response to their numerous exceedances of both NELs and NALs. Further, Accurate Steel's December 1, 2022 Level 1 ERA Evaluation Report was inadequate as evidenced by the continued exceedances of ammonia, even after apparently full implementation of the BMPs described therein. Each day Accurate Steel failed to submit timely, true and correct reports is a separate violation of the Clean Water Act. Accurate Steel has been in violation of these requirements at its Facility every day since at least July 3, 2019.

### III. Persons Responsible for the Violations.

LA Waterkeeper puts Accurate Steel on notice that they are the persons and entities responsible for the violations described above. If additional persons are subsequently identified as also being responsible for the violations set forth above, LA Waterkeeper puts Accurate Steel on formal notice that it intends to include those persons in this action.

### IV. Name and Address of Noticing Parties.

The name, address and telephone number of each of the noticing parties is as follows:

Notice of Violation and Intent to File Suit
July 3, 2024
Page 17

      Bruce Reznik, Executive Director
      Los Angeles Waterkeeper
      360 E 2nd Street Suite 250
      Los Angeles, CA 90012
      (310) 394-6162

**V.**    **Counsel.**

    LA Waterkeeper has retained legal counsel to represent it in this matter. Please direct all communications to:

 William N. Carlon
 Law Office of William Carlon
 437 Post Street
 Napa, CA 94559
 (530) 5144115
 william@carlonlaw.com

**VI.**    **Conclusion**

    LA Waterkeeper believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit. We intend to file a citizen suit under Section 505(a) of the CWA against Accurate Steel and their agents for the above-referenced violations upon the expiration of the 60-day notice period. If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period. We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

_____
William N. Carlon
Law Office of William Carlon
Counsel for LOS ANGELES WATERKEEPER

Notice of Violation and Intent to File Suit
July 3, 2024
Page 18

## SERVICE LIST

**VIA CERTIFIED MAIL**

    Michael Regan, Administrator
    U.S. Environmental Protection Agency
    1200 Pennsylvania Ave., N.W.
    Washington, D.C. 20460

    Martha Guzman, Regional Administrator
    U.S. Environmental Protection Agency, Region IX
    75 Hawthorne Street
    San Francisco, CA 94105

    Merrick B. Garland, U.S. Attorney General
    U.S. Department of Justice
    950 Pennsylvania Avenue, N.W.
    Washington, DC 20530-0001

    Eric Oppenheimer, Executive Director
    State Water Resources Control Board
    P.O. Box 100
    Sacramento, CA 95812

    Susana Arredondo, Executive Officer
    Los Angeles Regional Water Quality Control Board
    320 W 4th Street, #200
    Los Angeles, CA 90013

ATTACHMENT A
Notice of Intent to File Suit, Accurate Steel
Significant Rain Events,* July 3, 2019 – July 3, 2024

| | | |
|---|---|---|
| November 28, 2019 | December 31, 2021 | November 16, 2023 |
| November 29, 2019 | January 18, 2022 | December 20, 2023 |
| December 4, 2019 | March 29, 2022 | December 21, 2023 |
| December 5, 2019 | April 22, 2022 | December 22, 2023 |
| December 23, 2019 | June 22, 2022 | December 30, 2023 |
| December 26, 2019 | September 10, 2022 | December 31, 2023 |
| January 17, 2020 | November 2, 2022 | January 3, 2024 |
| February 23, 2020 | November 8, 2022 | January 21, 2024 |
| March 10, 2020 | November 9, 2022 | January 22, 2024 |
| March 13, 2020 | December 11, 2022 | January 23, 2024 |
| March 14, 2020 | December 12, 2022 | February 1, 2024 |
| March 15, 2020 | December 28, 2022 | February 2, 2024 |
| March 16, 2020 | January 1, 2023 | February 5, 2024 |
| March 17, 2020 | January 3, 2023 | February 6, 2024 |
| March 20, 2020 | January 4, 2023 | February 7, 2024 |
| March 23, 2020 | January 5, 2023 | February 8, 2024 |
| April 6, 2020 | January 6, 2023 | February 19, 2024 |
| April 7, 2020 | January 10, 2023 | February 20, 2024 |
| April 8, 2020 | January 11, 2023 | February 21, 2024 |
| April 9, 2020 | January 15, 2023 | March 2, 2024 |
| April 10, 2020 | January 16, 2023 | March 3, 2024 |
| April 13, 2020 | January 30, 2023 | March 7, 2024 |
| May 19, 2020 | February 24, 2023 | March 8, 2024 |
| December 28, 2020 | February 25, 2023 | March 23, 2024 |
| December 29, 2020 | February 26, 2023 | March 24, 2024 |
| January 24, 2021 | February 28, 2023 | March 25, 2024 |
| January 25, 2021 | March 1, 2023 | March 30, 2024 |
| January 29, 2021 | March 11, 2023 | March 31, 2024 |
| January 30, 2021 | March 15, 2023 | April 14, 2024 |
| March 4, 2021 | March 16, 2023 | April 15, 2024 |
| March 10, 2021 | March 20, 2023 | May 5, 2024 |
| March 11, 2021 | March 21, 2023 | |
| March 16, 2021 | March 22, 2023 | |
| October 26, 2021 | March 23, 2023 | |
| December 10, 2021 | March 29, 2023 | |
| December 14, 2021 | March 30, 2023 | |
| December 15, 2021 | April 13, 2023 | |
| December 24, 2021 | May 4, 2023 | |
| December 26, 2021 | August 20, 2023 | |
| December 28, 2021 | August 21, 2023 | |
| December 30, 2021 | September 2, 2023 | |

* Significant Rain Events are days where the 24-hour rainfall total was at least 0.1 inches according to publicly available rain and weather data collected at a station located near the Facility.