WILLIAM N. CARLON (Bar No. 305739)
Email: william@carlonlaw.com
LAW OFFICE OF WILLIAM CARLON
437 Post Street
Napa, CA 94559
Phone: (530) 514-4115

Barak J. Kamelgard (Bar No. 298822)
Email: Barak@lawaterkeeper.org
Benjamin A. Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
Erina Kwon (Bar No. 235079)
Email: erina@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

Attorneys for Plaintiff, LOS ANGELES WATERKEEPER

LEWIS BRISBOIS BISGAARD & SMITH LLP
JOSEPH A. SALAZAR JR., SB# 169551
E-Mail: Joe.Salazar@lewisbrisbois.com
RYAN MATTHEWS, SB# 311674
E-Mail: Ryan.Matthews@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
Sacramento, California 95833
Telephone: 916.564.5400
Facsimile: 916.564.5444

Attorneys for Defendant, ACCURATE STEEL TREATING, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOS ANGELES WATERKEEPER, <br><br> Plaintiff, <br><br> vs. <br><br> ACCURATE STEEL TREATING, INC., <br><br> Defendant. | Case No. 2:24-cv-07503-AB-SSC <br><br> **RULE 26(f) REPORT** |

This report is being submitted to the Court by the parties to comply with Federal Rule of Civil Procedure 26(f), and Local Rule 26-1.

A. **STATEMENT OF THE CASE**

Plaintiff's Statement:

This is an environmental citizen suit alleging claims under the Clean Water Act, 33 U.S.C. §§ 1251-1387. The Complaint alleges that Defendant has violated and continues to violate Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) by discharging pollutants from points sources at Defendant's facility located at 10008 Miller Way, South Gate, California 90280 ("Facility"). The Facility discharges to municipal storm drains that discharge to the Rio Hondo and the Los Angeles River, which drain to the Pacific Ocean. These waters are all waters of the United States.

More specifically, the Complaint asserts five claims for relief: (1) that Defendant discharges contaminated storm water from the Facility in violation of the Numeric Effluent Limitations set forth in the Industrial General Permit, NPDES No. CAS000001, Order No. 14-57-DWQ as amended by Order 2015-0122-DWQ and Order 2018-0028-DWQ ("General Permit"); (2) that Defendant's discharges of contaminated storm water from the Facility violate the General Permit's receiving water limitations; (3) That Defendant has failed to prepare, implement, review, and update a compliant storm water pollution prevention plan; (4) That Defendant has failed to develop and implement the required Best Available Technology Economically Achievable for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology for conventional pollutants at the Facility; and, (5) that Defendant has failed to implement an adequate Monitoring Implementation Plan for the Facility. Based upon these allegations, Plaintiff seeks civil penalties, injunctive relief, and costs (including reasonable attorney, witness, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d).

Defendant's Statement:

Defendant denies that it is in violation of the Clean Water Act, and further denies Plaintiff's allegations, as detailed in its Answer to Plaintiff's Complaint.

B. **SUBJECT MATTER JURISDICTION**

Plaintiffs Statement: This Court has subject matter jurisdiction pursuant to Clean Water Act

1  section 505(a)(1), 33 U.S.C. § 1365(a)(1), and 28 U.S.C. § 1331 (an action for declaratory,
2  injunctive, and other relief arising under the laws of the United States).

3  <u>Defendant's Statement:</u>

4  Defendants deny that there are ongoing violations of the Clean Water Act, such that this
5  Court has jurisdiction under the citizen suit provisions of the Clean Water Act. However, Defendants
6  lack sufficient information to disprove Plaintiff's allegations at this time.

7  **C. <u>LEGAL ISSUES</u>**

8  <u>Plaintiff's Statement:</u> The case presents the following legal issues:

9  A.  Whether all elements of Plaintiff's Clean Water Act claims can be established, namely
10      that Defendant is (1) a person (2) discharging (3) pollutants (4) from a point source (5)
11      into navigable waters (6) except as in compliance with a National Pollutant Discharge
12      Elimination System Permit ("NPDES");

13  B.  Whether Defendant is complying with the relevant portions of the General Permit, which
14      is the applicable NPDES permit for discharges of industrial storm water from the Facility.

15  <u>Defendant's Statement:</u>

16  A.  Whether Plaintiff can establish ongoing violations such that this Court has jurisdiction
17      over a citizen suit brought under the Clean Water Act.

18  **D. <u>PARTIES, EVIDENCE, etc.</u>**

19  <u>Plaintiff's Statement:</u>

20  1.  *List of Parties:*

21      a.  **Plaintiff Los Angeles Waterkeeper** – a non-profit public benefit corporation
22          organized under the laws of California. Founded in 1993, LA Waterkeeper is
23          dedicated to the preservation, protection, and defense of the inland and coastal surface
24          and ground waters of Los Angeles County including the Los Angeles River and the
25          Rio Hondo. The organization works to achieve this goal through education, outreach,
26          advocacy and, where necessary, litigation and enforcement actions under the Clean
27          Water Act on behalf of itself and its members.

28      b.  **Defendant Accurate Steel Treating, Inc.**

2. *Percipient Witnesses:*

   a. Witnesses may be called by LA Waterkeeper to support the factual component of its assertions of standing. In addition, LA Waterkeeper may call Bruce Resnik, as well as one or more of the above individuals, to address LA Waterkeeper's organizational standing.

   b. Plaintiff may also call as witnesses one or individuals who were and may still be Defendant's agents, employees, independent contractors, officers, directors, consultants, or other representatives (collectively, "Representatives"), and who have knowledge concerning:

      i. Defendant's ownership, possessory interest, site control rights, or access rights with respect to Defendant's Facility, including but not limited to, Defendant's right to implement best management practices ("BMP") at the Facility;

      ii. The direction of storm water runoff flow pathways, including the location of and flow path directions within subsurface storm drains or pipes for conveying storm water flow originating at Defendant's Facility until the storm water reaches the Pacific Ocean or other final receiving water, if applicable;

      iii. The presence, handling, storage, maintenance, or disposal of industrial materials at Defendant's Facility;

      iv. The past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste at Defendant's Facility;

      v. The waters, wetlands, wildlife, flora, fauna, and other natural resources impacted by Defendant's discharges of contaminated storm water runoff from Defendant's Facility;

      vi. Each BMP for storm water management at Defendant's Facility, including but not limited to, any materials or structures used as BMPs, materials disposed of in maintaining BMPs, or how often BMPs are used, implemented, replaced or maintained;

      vii. The nature and extent of industrial activities at Defendant's Facility;

    viii. The industrial activities occurring at Defendant's Facility, including the Standard Industrial Code classification for each such industrial activity; and,

    ix. Other issues relating to Defendant's operation and maintenance of Defendant's Facility.

 c. Plaintiff will be reviewing Defendant's discovery responses to determine which of Defendant's Representatives it may seek to depose and potentially call as witnesses.

 d. Plaintiff may also call as witnesses one or more employees of the State Water Resources Control Board and/or the Regional Board to testify concerning the nature of State and/or Regional Board oversight over Defendant's Facility. Plaintiff will need to conduct discovery to determine the identity of such witnesses.

 e. Plaintiff expects that a significant portion of the evidence it presents in this case will be in the form of expert witness testimony. Plaintiff will disclose its expert witness(es) by the deadline for expert disclosures.

3. *Key documents on the main issues in the case:*

Key documents could include document obtained by Plaintiff in discovery addressing the following topics:

 a. Defendant's ownership, possessory interest, site control rights, or access rights with respect to the Facility, including but not limited to Defendant's rights to implement storm water BMPs at the Facility;

 b. The direction of storm water runoff flow pathways, including the location of and flow path directions within subsurface storm drains or pipes for conveying storm water flow originating at Defendant's Facility until the storm water reaches the Pacific Ocean or other final receiving water, if applicable;

 c. The presence, handling, storage, maintenance, or disposal of industrial materials at Defendant's Facility;

 d. Defendant's current storm water pollution prevention plan, and all past versions;

 e. Defendant's notice of intent to comply with the General Permit;

 f. Defendant's annual reports for storm water discharges associated with industrial

activities with respect to Defendant's Facility;

g. Any and all reports submitted to the Regional Board that relate or pertain to storm water management at the Facility;

h. All documents that Defendant has submitted to the Regional Board;

i. Any Regional Board inspection reports relating to Defendant's Facility;

j. Correspondence between Defendant and the Regional Board relating to Defendant's Facility;

k. Rainfall data for rainfall at or near the Facility;

l. Laboratory analytical results for any samples of soil, sediment, storm water, or non-storm water at or discharged or disposed of from the Facility;

m. The past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste at Defendant's Facility;

n. The waters, wetlands, wildlife, flora, fauna, and other natural resources impacted by Defendant's discharges of contaminated storm water runoff from Defendant's Facility;

o. Each BMP for storm water management at Defendant's Facility, including but not limited to, any materials or structures used as BMPs, materials disposed of in maintaining BMPs, or how often BMPs are used, implemented, replaced or maintained;

p. The nature and extent of industrial activities at Defendant's Facility;

q. The industrial activities occurring at Defendant's Facility, including the Standard Industrial Code classification for each such industrial activity;

r. Documents that are relevant to the Clean Water Act civil penalty factors set forth in section 309(d) of the Act, 33 U.S.C. § 1319(d): "the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require."

  s. Documents pertinent to establishing Plaintiff's entitlement to reasonable attorneys' fees and costs;

  t. Other issues relating to responsibility and authority for Defendant's operation and maintenance of the Facility and Defendant's procedures for the same.

In addition, Plaintiff expects that a significant portion of the evidence it presents in this case will be in the form of observations of site conditions at the Facility and pollutant levels in samples obtained by Plaintiff on and off the Facility. Pertinent documents will include photographs and videotape of site conditions and laboratory reports of sample analysis of pollutant levels.

Defendant's Statement:

Defendant generally agrees with the list laid out by Plaintiff.

**E. DAMAGES**

Plaintiff's Statement:

The Clean Water Act citizen suit provisions under which Plaintiff is proceeding does not provide for the award of damages, only declaratory and injunctive relief, civil penalties, and attorneys' fees and costs.

Defendant's Statement:

Defendant generally agrees with the list laid out by Plaintiff.

**F. INSURANCE**

Plaintiff's Statement:

Plaintiff has no insurance agreements to disclose.

Defendant's Statement:

Defendant has no insurance agreements to disclose at this time.

**G. MOTIONS**

Plaintiff's Statement: There are no prior or pending motions. Plaintiff may seek to amend its complaint to add responsible corporate officers or other individuals who have operational control over the Facility and its management of storm water.

Defendant's Statement:

Defendant agrees with Plaintiff, though does not concede that adding any individual

Defendants would be appropriate.

## H. DISPOSITIVE MOTIONS

<u>Plaintiff's Statement:</u> Plaintiff anticipates filing an early motion for partial summary judgment on the narrow issue of its First Claim for Relief, whether Defendant violated the General Permit's Numeric Effluent Limitations by discharging storm water from the Facility containing concentrations of zinc that exceed the applicable Numeric Effluent Limitation. Plaintiff will make this motion based on publicly available reporting that Defendant has submitted to the Regional Water Quality Control Board ("Regional Board") under penalty of perjury. Plaintiff may also move for summary judgment on its Third Claim for Relief, whether Defendant has prepared and implemented a Storm Water Pollution Prevention Plan at the Facility; and, on its Fifth Claim for Relief, whether Defendant has developed and implemented an adequate Monitoring Implementation Plan for the Facility. Again, the bases for partial summary judgment on these claims will be Defendant's own documents and reports submitted to the Regional Board under penalty of perjury. These issues are ripe for an early motion for partial summary judgment because the facts that they rely on are already available, and are not subject to genuine dispute. For example, Defendant has already submitted storm water samples, its Storm Water Pollution Prevention Plan and Monitoring Implementation Plan to the Regional Board.

<u>Defendant's Statement:</u>

Defendant may file a Motion for Summary Judgment based on lack of subject matter jurisdiction, or based on other facts that may be developed throughout discovery.

## I. MANUAL FOR COMPLEX LITIGATION

<u>Plaintiff's Statement:</u>

This case does not require application of the Manual for Complex Litigation.

<u>Defendant's Statement:</u>

Defendant agrees.

## J. STATUS OF DISCOVERY

<u>Plaintiff's Statement:</u> No early discovery has been propounded in this case. The Parties will exchange initial disclosures on November 8, 2024 pursuant to Federal Rule of Civil Procedure

26(a)(1)(C). No discovery has been propounded as of today's date.

<u>Defendant's Statement:</u>

Defendant agrees.

**K. <u>DISCOVERY PLAN</u>**

<u>Plaintiff's Statement:</u>

1. *Changes, if any, in the disclosures under FRCP 26(a) should be made:*

   a. There is no reason to change the disclosures required under FRPC 26(a).

2. *Subjects on which discovery may be needed:*

   a. An inspection of the Facility during wet weather pursuant to Federal Rule of Civil Procedure 34. This is a time-sensitive piece of discovery because the time window for conducting such an inspection is limited to the winter months when there is a likelihood of rain. Plaintiff will seek to inspect Defendant's Facility to make observations about BMPs, or the lack thereof, implemented to control and treat storm water generated at the Facility;

   b. Defendant's organizational structure to determine who has the operational control over the Facility and its storm water management in order to properly identify additional defendants that might need to be added by way of an amendment to the complaint;

   c. Defendant's ownership, possessory interest, site control rights, or access rights with respect to the Facility, including but not limited to Defendant's rights to implement storm water BMPs at the Facility;

   d. The direction of storm water runoff flow pathways, including the location of and flow path directions within subsurface storm drains or pipes for conveying storm water flow originating at Defendant's Facility until the storm water reaches the Pacific Ocean or other final receiving water, if applicable;

   e. The presence, handling, storage, maintenance, or disposal of industrial materials at Defendant's Facility;

   f. The development and implementation of Defendant's current storm water pollution

prevention plan, and all past versions;

g. Laboratory analytical results for any samples of soil, sediment, storm water, or non-storm water at or discharged or disposed of from the Facility;

h. The past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste at Defendant's Facility;

i. The waters, wetlands, wildlife, flora, fauna, and other natural resources impacted by Defendant's discharges of contaminated storm water runoff from Defendant's Facility;

j. Each BMP for storm water management at Defendant's Facility, including but not limited to, any materials or structures used as BMPs, materials disposed of in maintaining BMPs, or how often BMPs are used, implemented, replaced or maintained;

k. The nature and extent of industrial activities at Defendant's Facility;

l. The industrial activities occurring at Defendant's Facility, including the Standard Industrial Code classification for each such industrial activity;

m. Discovery relevant to the Clean Water Act civil penalty factors set forth in section 309(d) of the Act, 33 U.S.C. § 1319(d): "the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require."

n. Other issues relating to responsibility and authority for Defendant's operation and maintenance of the Facility and Defendant's procedures for the same.

3. *Whether Discovery should be conducted in phases or otherwise be limited:*

   a. Discovery should not be conducted in phases or otherwise be limited.

4. *Whether applicable limitations should be changed or other limitations imposed:*

   a. No applicable limitations should be changes or other limitations imposed.

5. *Whether the Court should enter other orders:*

        a. No orders are necessary at this time.

    Defendant's Statement:

    Defendant generally agrees.

**L. DISOVERY CUT-OFF**

    Plaintiff's Statement:

    Plaintiff proposes a discovery cut-off date of November 28, 2025, in accordance with the Court's Schedule of Pretrial and Trial Dates Worksheet.

    Defendant's Statement:

    Defendant generally agrees.

**M. EXPERT DISCOVERY**

    Plaintiff's Statement:

    Plaintiff proposes the following dates relating to expert discovery:

    1. Initial Expert Witness Disclosures: October 24, 2025

    2. Rebuttal Expert Witness Disclosures: November 7, 2025

    3. Expert Discovery Cut-off Date: November 28, 2025

    Defendant's Statement:

    Defendant generally agrees.

**N. SETTLEMENT EFFORTS TO DATE AND ADR**

    Plaintiff's Statement:

    The parties have discussed settlement on October 25, 2024.

    Plaintiff is amenable to having this matter referred to a magistrate judge for settlement conference, but would like to complete certain discovery beforehand in order to make such a conference as productive as possible. For example, a wet weather site inspection would provide the bases for injunctive terms in a potential consent decree.

    Defendant's Statement:

    Plaintiff has not provided a comprehensive settlement demand. The parties are discussing a settlement privilege-protected conference on site where fact finding could provide significant aids to potential settlement discussions.

**O. TRIAL ESTIMATE**

Plaintiff's Statement:

Plaintiff estimates that a trial would require approximately 5 court days.

Defendant's Statement:

Defendant generally agrees.

**P. TRIAL COUNSEL**

Plaintiff's Statement:

1. William Carlon (lead trial counsel)
2. Barak Kamelgard
3. Erina Kwon
4. Ben Harris

Plaintiff may retain additional co-counsel to assist in trial.

Defendant's Statement:

1. Joseph Salazar, Jr.
2. Ryan Matthews

**Q. INDEPENDENT EXPERT OR MASTER**

Plaintiff's Statement:

Plaintiff does not believe that appointment of a Master pursuant to FRCP 53 is necessary.

Defendant's Statement:

Defendant agrees.

**R. SCHEDULE WORKSHEET**

Plaintiff's Statement:

Plaintiff has provided the attached Scheduling Worksheet.

Defendant's Statement:

Defendant proposes different trial dates, as Defendant's counsel is set for trial in another matter on March 3, 2026. Defendant proposes March 24 or 31, 2026.

**S. OTHER ISSUES**

Plaintiff's Statement:

No other issues at this time.

Defendant's Statement:

No other issues at this time.

Respectfully submitted,

Dated: November 8, 2024    LAW OFFICE OF WILLIAM CARLON
                          By:    /s/ William Carlon
                                 William Carlon
                                 Attorney for Plaintiff
                                 LOS ANGELES WATERKEEPER

Dated: November 8, 2024    LEWIS BRISBOIS BISGAARD & SMITH LLP
                          By:    /s/ Joseph Salazar
                                 Joseph Salazar
                                 Attorney for Defendant
                                 ACCURATE STEEL TREATING, INC.