# EXHIBIT 1

WILLIAM N. CARLON (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
Tel: (530) 514-4115
Email: william@carlonlaw.com

Benjamin Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
Erina Kwon (Bar No. 235079)
Email: erina@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>Plaintiff,<br><br>v.<br><br>ACCURATE STEEL TREATING, INC., a California corporation,<br><br>Defendant. | Case No.: 2:24-cv-07503-MWC-SSC<br><br>**[PROPOSED] CONSENT DECREE** |

## **CONSENT DECREE**

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendant Accurate Steel Treating, Inc. ("Defendant") owns and operates a facility at 10008 Miller Way, South Gate, California 90280, under Waste Discharger Identification number 4 19I009388 ("Facility");

**WHEREAS,** the Facility's primary industrial activities consist of treatment of steel through various processes, electroplating, and supporting operations. The Facility is categorized under Standard Industrial Classification ("SIC") Codes 3398, covering metal heat treating, and 3471, covering electroplating, plating, polishing, anodizing, and coloring;

**WHEREAS,** storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility ("General Permit" or "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

"CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on July 3, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, on September 3, 2024, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:24-cv-07503 ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the Rio Hondo and Los Angeles River, which drain to

Queensway Bay, San Pedro Bay, and the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.     Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.     The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.     LA Waterkeeper has standing to bring this action.

5.     The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

# I.     OBJECTIVES

6.     It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.     In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

# II.     AGENCY REVIEW AND DEFINITIONS

## A.     AGENCY REVIEW OF CONSENT DECREE

8.     <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.     <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.     <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.    DEFINITIONS**

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

      a.    "BAT" means the Best Available Technology Economically Achievable.

      b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

      c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

      d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

      e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

      f.    "Design Storm" means the design storm calculated in accordance with the design storm standards set forth in General Permit for Volume-based BMPs (General Permit § X.H.6.a.) or Flow-based BMPs (General Permit § X.H.6.b.).

      g.    "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

      h.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

i.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

j.    "Forecasted Rain Event" means a forecasted rain event as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "90280, Downey, CA, USA"[2].

k.    "MIP" means a Monitoring Implementation Plan.

l.    "PPT" means Pollution Prevention Team.

m.    "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

n.    "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

o.    "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

p.    "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

q.    "SWPPP" means a Storm Water Pollution Prevention Plan.

r.    "Term" means the period between the Effective Date and the "Termination Date."

s.    "Termination Date" means the latest of:

    i.    June 30 following five (5) years from the Effective Date;

    ii.    June 30 following two (2) years after the Advanced Treatment System (defined below) is fully installed, operational, and optimized, if applicable;

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=33.9482&lon=-118.156.

[PROPOSED] CONSENT DECREE

iii.    seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the later of the dates in Paragraphs 11.r.i and 11.r.ii above; or

iv.    seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

t.    "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III.   COMMITMENTS OF THE SETTLING PARTIES

### A.   STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.   <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.   <u>Current and Additional Best Management Practices.</u> At all times, Defendant shall implement BMPs identified in its SWPPP as revised pursuant to this Consent Decree and required by the General Permit and the Clean Water Act.

14.   <u>Rain Gauge/Sensor.</u> Defendant and Plaintiff shall agree that the public rain gauge sensor located at Imperial Yard (https://dpw.lacounty.gov/wrd/rainfall/#) shall be the definitive measure of rainfall at the Facility for purposes of this Consent Decree.

15.   <u>Structural and Non-Structural BMPs for the Facility.</u> Defendant shall develop and implement the following BMPs at the Facility:

a.   <u>Initial BMPs.</u> As soon as possible but no later than forty-five (45) days of the Effective Date, unless otherwise noted, Defendant shall develop and implement the following BMPs at the Facility, unless impracticable in which case Defendant will notify Plaintiff

as soon as possible, and in no case later than 30 days from the date that Defendant learns of an impediment to implementation:

i.    Retrofit all visibly degraded galvanized roof surfaces from which storm water flows into any drainage area to minimize zinc accumulation in storm water;

ii.    Implement a daily sweeping program using a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 μm) particles on all paved areas at least once per month outside of the Wet Season, once per week during the Wet Season, and within twenty-four (24) hours prior to a Forecasted Rain Event, and employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access;

iii.    During each Wet Season, as necessary, replace the wattles/filters/socks when visibly degraded or ineffective and/or when sampling data demonstrates the wattles/filters/socks are not sufficiently reducing pollutant concentrations;

iv.    Within twenty-four (24) hours prior to a Forecasted Rain Event, inspect all wattles/filters/socks deployed at the Facility;

v.    Improve existing overhead structures, consistent with the definition of "Storm-Resistant Shelters" in the General Permit, to minimize the potential for stormwater to encounter the material below the structures or for contents to become windborne, especially the Hazardous Waste Storage Areas;

[PROPOSED] CONSENT DECREE

vi.    Within twenty-four (24) hours prior to a Forecasted Rain Event, remove any exposed waste material and cover all industrial materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

vii.    Remove, and prevent the storage of, all unused, inutile, and/or abandoned racks, vehicles, equipment, paint and waste scrap materials from the entire property;

viii.    Institute an equipment and vehicle maintenance program that ensures:

A.    no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

B.    maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

C.    when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground; and

ix.    Inspect hazardous material and waste storage areas daily for proper implementation and maintenance of control measures and containment integrity;

x.    Implement the consolidated treatment system as detailed in the proposal from GSI, Inc., as understood by the parties

9

based on mutually agreed-upon documentation attached to this Consent Decree as Exhibit A.

xi. Within seven (7) days of each of the above BMPs being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs as appropriate, that such BMP has been implemented as set forth herein.

**B. SAMPLING AT THE FACILITY**

16. Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point from all Qualifying Storm Events. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. If Defendant would have been required to collect samples during a rain event pursuant to this Consent Decree had such rain event produced a discharge, but Defendant did not collect samples because such rain event did not produce a discharge, then Defendant shall document the inability to sample by taking photographs during the rain event of each Discharge Point from which no discharge occurred. Defendant shall submit such photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain event, within five (5) days of a written request for such records by LA Waterkeeper, but not more than once per quarter. A request may cover multiple rain events.

17. Sampling Parameters. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant intend to conduct sampling for any additional parameters required by a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendant shall immediately notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such

purposes within ten (10) days of such notification. A parameter may be removed from Table 1 if (1) it is no longer present at the Facility; (2) sampling results from four (4) or more consecutive QSEs demonstrate no Exceedances of Table 1; or (3) it is not otherwise required to be analyzed pursuant to Section XI.B.6 of the General Permit.

18.    <u>Laboratory and Holding Time</u>. Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

19.    <u>Detection Limit</u>. Defendant shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

20.    <u>Reporting</u>. Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within ten (10) days of receiving the laboratory report with the results.

**C.    REDUCTION OF POLLUTANTS IN DISCHARGES**

21.    <u>Table 1 Applicable Thresholds</u>. Defendant shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels below those in Table 1.

**TABLE 1[3]**

| Parameter | Threshold | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L (annual) 400 mg/L (instantaneous) | NAL |
| pH | 6.0-9.0 (instantaneous) | NAL |
| Oil & Grease | 15 mg/L (annual) 25 mg/L (instantaneous) | NAL |
| Zinc | 0.159 mg/L (instantaneous) | NEL |
| Cadmium | 0.0031 mg/L (instantaneous) | NEL |
| Copper | 0.06749 mg/L (instantaneous) | NEL |
| Ammonia | 2.14 mg/L (annual) | NAL |
| N+N | 0.68 mg/L (annual) | NAL |
| Iron | 1.0 mg/L (annual) | NAL |
| Aluminum | 0.75 mg/L (annual) | NAL |

22. <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 is defined as follows: (a) where the concentration of any pollutant in any two (2) storm water samples from the same discharge point at the Facility during a Reporting Year exceed an annual threshold contained in Table 1; and/or (b) where the concentration of any pollutant in any storm water sample from the Facility exceeds an instantaneous threshold contained in Table 1.

---

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for zinc is either increased to 0.30 mg/L or decreased to 0.20 mg/L, such new NAL, and not 0.26 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for iron being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

23.     <u>Action Plan</u>. As of the Effective Date, and for the remainder of the Term, if (a) Defendant has an unauthorized non-storm water discharge in violation of Paragraph 12, or (b) storm water samples demonstrate an Exceedance as defined above, or iterative actions are required consistent with the General Permit, or (c) after an Advanced Treatment System is fully installed, operational, and optimized, if ever, the Advanced Treatment System discharges untreated storm water in smaller than a Design Storm, (each, a "Trigger Event"), Defendant shall prepare and submit to LA Waterkeeper a plan to address the conditions causing the Trigger event ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the applicable Trigger Event.

a.     <u>Action Plan Requirements</u>. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s) and/or the applicable unauthorized non-storm water discharge and/or the discharge in smaller than a Design Storm, if applicable; (2) an assessment of the source of each pollutant exceedance and/or applicable unauthorized non-storm water discharge and/or applicable discharge in smaller than a Design Storm, if applicable; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s) and/or unauthorized non-storm water discharge prohibition and/or Design Storm standard, if applicable, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling

13

Parties. Within seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

b.    Action Plan Proposed BMPs. The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

i.    Hydrologic Controls. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii.    Sweeping. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iii.    Treatment Systems. Installing additional components or systems, such as an Advanced Treatment System, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

iv.    Evaluation of Existing BMPs. Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

v.    Paving. Patching, paving, or otherwise resurfacing areas of degraded pavement or asphalt throughout the Facility.

vi.    Wattles. Employing and securing new wattles/filters/filtration socks (biochar or other equivalent

14

media) to reduce sediments, metals, and organic materials in storm water discharged from the Facility, and configure such wattles/filters/socks to achieve maximum contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations, and implement a regular replacement interval.

c.  Action Plan Review. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.  Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 28.b.i below.

e.  Action Plan Payments. Defendant shall pay Five Thousand Dollars ($5,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E. 2nd

15

Street, Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

### D. VISUAL OBSERVATIONS

24. <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendant or a qualified third-party contractor shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

25. <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Defendant or a qualified third-party contractor shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. Such observations shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

26. <u>Visual Observations Records</u>. Defendant shall maintain observation records, including photographs, to document compliance with Paragraphs 24 and 25 Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed

16

activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing.  Defendant shall provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records, but not more than once per quarter. This limitation shall reset in the event of any Table 1 exceedance or action plan, as described above.

27.    <u>Employee Training Program</u>. Within thirty (30) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures that either (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"): or (2) that a qualified third-party contractor performs those activities.

a.    <u>Materials</u>. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

b.    <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c. <u>Training Frequency</u>. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d. <u>Sampling Training</u>. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory, or shall have those samples collected by a qualified third-party contractor;

e. <u>Visual Observation Training</u>. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f. <u>Non-Storm Water Discharge Training</u>. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g. <u>Employees</u>. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h. <u>Records</u>. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper

with a copy of these records within seven (7) days of receipt of a written request, but not more than once per quarter.

28.   <u>SWPPP Revisions</u>.

    a.   <u>Initial SWPPP Revisions</u>. Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

        i.   A revised pollutant source assessment, including all elements required by Section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

        ii.   A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by Section X.G of the General Permit;

        iii.   Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

        iv.   A set of site maps that comply with Section X.E of the General Permit and provisions of this Consent Decree, including accurately depicting the different drainage areas and flows;

v.     A MIP as required by Sections XI and X.I of the General Permit;

vi.    A designation (by position/title) of either employees or a qualified third-party contractor responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

vii.   A Training Program as described above in Paragraph 27.

b.    <u>Additional SWPPP Revisions</u>.

i.     Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

ii.    Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c.    <u>Review of SWPPP</u>.  For any SWPPP updates pursuant to Paragraphs 28.a and 28.b, LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

**E.    COMPLIANCE MONITORING AND REPORTING**

29.    LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least twenty-four (24) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice

will be provided by electronic mail to the individual(s) designated below at Paragraph 56. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

30.    <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

a.    Defendant shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 56, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

b.    Within ten (10) days of receipt by Defendant, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 56, any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

31.    <u>Compliance Monitoring</u>. Defendant shall partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term through June 30 following five (5) years from the Effective Date by paying Twenty-Five Thousand Dollars ($25,000.00) by no later than January

15, 2026. In the event that, pursuant to Paragraph 29, there is an additional Site Inspection in a given year to resolve a dispute, Defendant shall reimburse LA Waterkeeper an additional Two Thousand Five Hundred Dollars ($2,500.00) during such year, within thirty (30) days after any additional Site Inspection. Payments pursuant to this Paragraph shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

### F.    ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST

32.    <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in waters tributary to San Pedro Bay, Defendant shall make a payment totaling Forty Thousand Dollars ($40,000.00) to the South Coast Trout Unlimited made no later than January 15, 2026, payable to the South Coast Trout Unlimited and sent via overnight mail to South Coast Trout Unlimited, 3154 Glendale Blvd, 117, Los Angeles CA 90039. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

33.    <u>LA Waterkeeper's Fees and Costs</u>. Defendant shall pay a total of One Hundred Thirty-Five Thousand Dollars ($135,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: the Law Office of William Carlon and delivered by overnight carrier to 437 Post Street, Napa, California 94559. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34.    <u>Missed Deadlines</u>. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, LA Waterkeeper shall provide written notice to Defendant of such missed deadline. Defendant shall have seven (7) days from receipt of such notice to respond to LA Waterkeeper, and, if necessary cure such delinquency. If Defendant fails to respond, and, if necessary cure such alleged delinquency within seven (7) days of receipt of LA Waterkeeper's notice, Defendant shall pay a stipulated payment of Five Hundred Dollars ($500) per day. Such stipulated payments shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 32. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

**IV.    DISPUTE RESOLUTION**

35.    <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

36.    <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 36, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

37.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to

the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.     MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

38.     <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

39.     <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

40.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.     MISCELLANEOUS PROVISIONS

41.     <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability,

nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

42.  Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

43.  Authority. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

44.  Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

45.  Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

46.  Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

47.  Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

48.  Choice of Law. The laws of the United States shall govern this Consent Decree.

49.    Diligence. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

50.    Effect of Consent Decree. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

51.    Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

52.    Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

53.    Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

54.    Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action

[PROPOSED] CONSENT DECREE

or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

55.    <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendant: |
|---|---|
| Los Angeles Waterkeeper | Lewis Brisbois |
| Benjamin Harris | Ryan Matthews |
| Erina Kwon | Joseph Salazar |
| Madeleine Siegel | 2020 West El Camino Avenue, Suite 700 |
| 360 E 2nd St., Suite 250 | Sacramento, California 95833 |
| Los Angeles, CA 90012 | Email: ryan.matthews@lewisbrisbois.com |
| Email: ben@lawaterkeeper.org | Email: joe.salazar@lewisbrisbois.com |
| Email: erina@lawaterkeeper.org | |
| Email: madeleine@lawaterkeeper.org | |
| Phone: (310) 394-6162 | |
| | |
| With copies to: | With copies to: |
| Law Office of William Carlon | Lewis Brisbois |
| William Carlon | Ryan Matthews |
| 437 Post Street | Joseph Salazar |
| Napa, California 94559 | 2020 West El Camino Avenue, Suite 700 |
| Email: william@carlonlaw.com | Sacramento, California 95833 |
| Phone: (530) 514-4115 | Email: ryan.matthews@lewisbrisbois.com |
| | Email: joe.salazar@lewisbrisbois.com |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

56.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.


APPROVED AS TO CONTENT

Dated: September 17, 2025                    By: _____
                                                  Bruce Reznik
                                                  Executive Director
                                                  Los Angeles Waterkeeper


Dated: 9/17/2025 _____, 2025          By: _____
                                                  Chris Hall
                                                  President
                                                  Accurate Steel Treating, Inc.

[PROPOSED] CONSENT DECREE

APPROVED AS TO FORM

LAW OFFICE OF WILLIAM CARLON

Dated: September 17, 2025            By: _____

WILLIAM CARLON
Attorney for Plaintiff
Los Angeles Waterkeeper

LEWIS BRISBOIS

Dated: September 17, 2025            By: _____

RYAN MATTHEWS
Attorney for Defendant
Accurate Steel Treating, Inc.

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: _____            CENTRAL DISTRICT OF CALIFORNIA

_____
HONORABLE MICHELLE W. COURT
United States District Court Judge

# EXHIBIT A



EXHIBIT A

**TO:**     Ryan Matthews <Ryan.Matthews@lewisbrisbois.com>

**FROM:**   Timothy S. Simpson, PE, GE <tssimpson@gsienv.com>

**RE:**     Plan for Improved Stormwater BMPs

---

This memo has been prepared by GSI Environmental Inc. (GSI), on behalf of Accurate Steel Treating (AST), located at 10008 Miller Way in South Gate, California 90280 (Facility or Site) to describe the plan for managing industrial stormwater runoff. Following discussions with AST and counsel, GSI has proposed the following stormwater capture and treat plan to improve stormwater runoff water quality.

A hydrologic analysis using a topographic contour map prepared by a California-licensed professional land surveyor, was completed to size conceptual stormwater treatment equipment in accordance with section X.H.6 of the General Permit, which establishes design standards for treatment control BMPs. The Site Plan for managing the Facility's stormwater runoff is included as an attachment to this memo as Figure 1. The water balance model used in this analysis is represented by the process flow diagram and described below:



- Trench drains will be constructed at each of the existing discharge locations to capture runoff from the respective subdrainage area.

- The trench drains will convey runoff to sumps, each containing a submersible pump capable of transferring all captured runoff to an attenuation storage tank in Drainage Area 2. This will prevent bypasses from occurring in the existing drainage areas.

- The attenuation storage tank will have an overflow pipe for pressure relief and to direct overflow to DP-2. Untreated stormwater from the attenuation storage tank will be metered to modified IBC totes used as media filters for treatment.

- Treated stormwater will be discharged to a single outfall (DP-2). Untreated bypass/overflow will only occur at this one outfall as well, reducing the number of discharge locations at which an exceedance can occur.

---

GSI Job No.: 10592
Issued: 25 August 2025
Page 2 of 3



Table 1 below includes the minimum design requirements that have been calculated as part of the hydrologic analysis.

### Table 1: Minimum Design Requirements

| Design Item | Minimum Value(s)[1] (Unit) |
|---|---|
| **Drainage Area 1** | |
| Capture Trench | Dimensions: (30' L x 6" W x 6" D) Slope: 1% (1'/100') |
| Capture Sump | Dimensions: (4' L x 4' W x 4' D) |
| Pump Specifications | 140 gpm Float-switch activated |
| Pipe Conveyance | ID: 3" Length: 105' |
| **Drainage Area 2** | |
| Capture Trench | Dimensions: (30' L x 6" W x 6" D) Slope: 1% (1' per 100') |
| Capture Sump | Concrete Dimensions: (3' L x 3' W x 3' D) |
| Pump Specifications | 60 gpm Float switch activated |
| Pipe Conveyance | ID: 3" Length: 20' |
| **Drainage Area 3** | |
| Capture Trench | Dimensions: (30' L x 6" W x 6" D) Slope: 1% (1' per 100') |
| Capture Sump | Dimensions: (4' L x 4' W x 4' D) |
| Pump Specifications | 150 gpm |
| Pipe Conveyance | ID: 3" Length: 115' |
| **Attenuation Storage and Treatment** | |
| Attenuation Storage Tank | 5,000 gallons |
| Transfer Pump | 60 gpm |
| Treatment Totes | (4x) Modified IBC (or equivalent) container Media: Biochar Combined flow rate: 55 gpm |

1.    All values are approximate; field-verify prior to construction/installation.
2.    Abbreviations: L = length, W = width, D = depth, ' = foot, " = inch, gpm = gallons per minute.

Should you have any questions regarding this memo, please contact GSI at 949-679-1070.

GSI Job No.: 10592
Issued: 25 August 2025
Page 3 of 3



Sincerely,

Timothy S. Simpson, PE, GE, QISP ToR
Vice President and Principal Engineer
GSI Environmental Inc.

**Attachments**

Figure 1 – Site Plan